UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARY GODFREY,

        Plaintiff,

v.                                                       Case No. 17-C-1721

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions not reserved
to the Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER

Plaintiff Mary Godfrey filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act. Godfrey contends that the administrative law judge's (ALJ) decision is flawed and requires remand because the ALJ erred in his evaluation of medical opinions and the ALJ's residual functional capacity (RFC) assessment and hypothetical posed to the vocational expert (VE) did not adequately account for her concentration, persistence, and pace (CPP) limitations. For the reasons that follow, the Commissioner's decision will be reversed and remanded.

## BACKGROUND

In March of 2012, Godfrey filed a Title II application for disability insurance benefits, alleging that her disability began on February 1, 2012. R. 20. Godfrey listed piriformis syndrome and chronic diarrhea as the conditions that limited her ability to work. R. 169. After her application

was denied initially and on reconsideration, Godfrey had a hearing before an ALJ on March 12, 2014. In a decision issued on May 15, 2014, the ALJ found that Godfrey had several severe impairments, including morbid obesity with BMI above 60, an associated history of piriformis syndrome, and major depression, but was not disabled. Godfrey sought judicial review of the Commissioner's final order at that time, and on March 22, 2016, the court remanded the case to the Social Security Administration (SSA) based on the parties' stipulation to evaluate findings regarding Godfrey's cognitive impairment, obtain a consultative examination with cognitive testing as warranted, and obtain medical expert testimony as warranted. R. 423. On April 12, 2017, ALJ Jeffry Gauthier conducted a video hearing where Godfrey, who was represented by counsel, and a VE testified. R. 348–84.

At the time of the hearing, Godfrey was 34 years old, was five feet four inches in height, and weighed 333 pounds. She was single and lived with her parents, both of whom are on disability, in Lakewood, Wisconsin. R. 352–54, 56. Godfrey has no income and has never been employed. R. 349, 354. Godfrey testified that she has a driver's license and receives medical coverage from the state. R. 355–56.

Regarding her physical impairments, Godfrey testified that she has constant sharp pain in her lower back that also radiates down into her leg on a daily basis. R. 360, 370–71. As a result, Godfrey stated that on a good day she has difficulties staying seated for more than ten minutes and needs to get up and walk around but that she is unable to walk around for more than five minutes before she is uncomfortable again. R. 373–74. On bad days, which occur 4 to 5 times a week, Godfrey is unable to be comfortable while standing or sitting. R. 374. Godfrey testified that the prescription medicine she takes to help with pain and sleeping, Gabapentin, is ineffective, she

2

occasionally uses heat pads for pain, weight loss does not improve her condition, and although she was referred to physical therapy she never attempted it because she did not think it would help her improve. R. 360–61, 364–65. Godfrey is able to lift a gallon of milk. R. 374.

Godfrey also testified regarding her cognitive capabilities, reporting that she was not good at counting and remembering. R. 365. In response to questions from her attorney, Godfrey stated she can make change and do basic arithmetic. R. 373. Godfrey stated that without her back issues her cognitive impairment would not prevent her from being a dishwasher or working in a childcare setting. R. 365–66. Godfrey also stated that she does not like being around groups of people and is scared to go anywhere alone. R. 364.

During a normal day, Godfrey testified that she usually sits and talks with her mother, occasionally watches tv, and spends a couple of hours each day reading mostly romance novels on her Kindle. R. 367–68, 370. Godfrey stated that she usually cannot read for more than twenty minutes before she becomes uncomfortable due to her back pain and has to get up to walk around. R. 369. Godfrey testified that she helps take care of the family dog, but is no longer able to help with chores around the house. R. 372.

In a written decision dated October 3, 2017, the ALJ concluded Godfrey was not disabled. R. 327–39. Following the agency's five-step sequential evaluation process, the ALJ concluded that Godfrey had not engaged in substantial gainful activity since her application date, March 16, 2012. R. 329. At step two, the ALJ found Godfrey had the following impairments: degenerative disc disease of lumbar spine, obesity, affective disorder, and borderline intellectual functioning. R. 330. At step three, the ALJ determined Godfrey's impairments or combination of impairments did not meet or medically equal any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

At step four, the ALJ concluded Godfrey has the RFC to perform light work with additional limitations. R. 332. Relevant to the case at hand, the ALJ found the following limitations:

> With regard to understanding, remembering and carrying out instructions, she can perform simple, routine, and repetitive tasks but not at a production rate pace (e.g. assembly line work). With regard to use of judgment in the workplace, she can make simple work related decisions. The claimant is capable of occasional interaction with the public and frequent interaction with supervisors and coworkers. She can tolerate occasional changes in a routine work setting. In addition to regularly scheduled breaks, she will be off task less than 10% of the time in a 8-hour workday.

*Id.* Godfrey has no past relevant work. R. 337. At step five, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Godfrey could have performed, such as small part assembler, electronics assembler, and laundry folder. R. 337–38. Based on these findings, the ALJ concluded Godfrey was not disabled within the meaning of the Social Security Act since the date her application was filed. R. 338. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Godfrey's request for review. Thereafter, Godfrey commenced this action for judicial review.

## LEGAL STANDARD

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusion drawn.

*Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Godfrey raises a number of challenges to the ALJ's decision, but the court finds that only one need be addressed since it is sufficient by itself to require a remand. Godfrey claims that the ALJ's RFC Assessment and hypothetical question posed to the VE did not fully encapsulate the limitations caused by her mental impairments and did not fully inform the VE of those limitations. It is well established that "[b]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

At steps two and three of the sequential evaluation process, the ALJ, utilizing the SSA's "special technique" for assessing mental impairments, 20 C.F.R. § 416920a, found that Godfrey had moderate limitations in "understanding, remembering, or applying information;" "interacting with others;" "concentrating, persisting, or maintaining pace;" and "adapting or managing oneself."

5

R. 330–31.  Because her mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ concluded the "Paragraph B" criteria were not satisfied for a listed impairment.  R. 331.  If a claimant has an impairment that is of a severity that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I, and meets the duration requirement, the claimant is deemed disabled.  20 C.F.R. § 416.920(d).  At the same time, because the degrees of limitation were more than "none" or "mild," the impairment was found to be severe, requiring further assessment.  20 C.F.R. § 416.920a(d); SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

Further assessment of Godfrey's mental impairment was done by James Heider, an Education Specialist and licensed psychologist; Brenda Reed, Psy.D., a clinical psychologist; and Eric Edelman, Ph.D., a state agency consultant.  After a thorough discussion of their respective opinions and reports, the ALJ gave Dr. Edelman's opinion "great weight," R. 336, Dr. Reed's opinion "some weight," R. 335, and Mr. Heider's opinion less weight, R. 336.  Since it is Dr. Edelman's opinion that received the greatest weight, the RFC determined by the ALJ should have at least included the limitations Dr. Edelman noted.

Dr. Edelman noted in Section I of the Mental Residual Functional Assessment (MRFCA) form that Godfrey was "moderately limited" in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to interact appropriately with the general public, and the ability to respond appropriately to changes in the work setting.  R. 73–75.

6

Notwithstanding these limitations, Dr. Edelman provided the following narrative description of Godfrey's MRFC: "The clt's depressive disorder would limit her to unskilled work. Because she is shy and uncomfortable in social situations, she may also do best in jobs that do not require significant contact with the general public." R. 75.

The ALJ actually found Godfrey to have a mental RFC significantly more restrictive than Dr. Edelman assessed. As noted above, the ALJ determined that Godfrey was limited to "simple, routine, and repetitive tasks but not at a production rate pace (e.g. assembly line work)." R. 332. The ALJ further limited Godfrey to "simple work related decisions," only "occasional interaction with the public and frequent interaction with supervisors and coworkers," "occasional changes in a routine work setting," and added a 10% off-task limitation. *Id.* Despite this fact, Godfrey contends that the ALJ erred in failing to include all of these "moderate" limitations in the RFC and hypothetical question posed to the VE.

Godfrey's argument finds strong support in several Seventh Circuit opinions, including most recently *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. Feb. 26, 2019). The ALJ may have thought that limiting Godfrey to "simple, routine, and repetitive tasks but not at a production rate pace (e.g. assembly line work)" was sufficient to account for the moderate difficulties in CPP the ALJ found, but the Seventh Circuit has made clear that it is not. As the court explained only last month in *DeCamp*,

> We have previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace. The ALJ's analysis is similarly flawed with respect to DeCamp's mild limitations in understanding, remembering, and carrying out simple instructions and her moderate limitations in concentration, persistence, and pace as found by Dr. Goldstein. An ALJ need not use specific terminology, but we have

7

> repeatedly rejected the notion that a hypothetical ... confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.

*Id.* (internal citation omitted) (alteration in original).

The ALJ further erred in failing to include in the RFC the additional limitations Dr. Edelman noted Godfrey had with respect to other more specific activities within the CPP domain, including the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 74. Having given "great weight" to Dr. Edelman who identified these limitations, the ALJ was required to include those limitations as well in both his RFC and the hypothetical he posed to the VE, or explain why he did not. Again, returning to *DeCamp*,

> The ALJ's hypothetical to the vocational expert omitted any mention of DeCamp's moderate limitations in the four areas identified by Dr. Pape (whose opinion the ALJ cited to support her finding): maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination or proximity to others without being distracted; and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace.

*Id.*; *see also Radosevich v. Berryhill*, No. 17-3326, 2019 WL 286172 (7th Cir. Jan. 22, 2019).

In *DeCamp*, the Seventh Circuit rejected the arguments that the ALJ's findings on the "Paragraph B" criteria at steps 2 and 3 of the sequential evaluation process and the State agency consultants worksheet findings in Section I of the MRFCA form do not constitute RFC findings. *DeCamp* explicitly held that while an ALJ may rely on the narrative description of the plaintiff's ability to perform work related tasks in the MRFCA form, "the ALJ still must adequately account

for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms." 961 F.3d 671.

In this case, the ALJ used language in his RFC formulation that the Seventh Circuit has explicitly found insufficient to convey the moderate limitations in CPP that the ALJ found. In addition, the ALJ failed to include other limitations noted by Dr. Edelman in Section I of the MRFCA form, including Godfrey's moderate limitations in her ability "to maintain attention and concentration for extended periods, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms" and "to perform at a consistent pace without an unreasonable number and length of rest periods." R. 74. Having accorded great weight to Dr. Edelman, it was incumbent upon the ALJ to either include those additional limitations or explain why he did not. He did neither.

It is also clear from *DeCamp* and *Radosevich* that under the law of this circuit, "moderately limited" means more than some impairment. Exactly what more it means is unclear. While the ALJ's attempt to translate such a limitation into job-related restrictions that fit within a VE's terminology is understandable, doing so risks likely appeal and almost certain reversal. *See, e.g.*, *Winsted v. Berryhill*, 915 F.3d 466, 471 (7th Cir. 2019) ("Though particular words need not be incanted, we cannot look at the absence of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question." (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010))).

The Seventh Circuit recognizes three circumstances where an ALJ need not explicitly address a claimant's limitations in CPP. "[A]n ALJ must explicitly address those [CPP] limitations in the hypothetical unless one of three exceptions applies: (1) the vocational expert was independently familiar with the claimant's medical file; (2) the hypothetical adequately apprised the vocational expert of the claimant's underlying mental conditions; or (3) the hypothetical otherwise accounted for the limitations using different terminology." *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017) (citation omitted). None of those exceptions apply here. There is no evidence in the record that indicates the VE was independently aware or apprised by the hypothetical question of Godfrey's limitations in CPP or the other limitations noted. And under controlling case law of this circuit, the ALJ's alternative language did not account for all of the limitations noted in the forms on which the ALJ relied. The Commissioner's decision must therefore be reversed.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four). The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this  14th  day of March, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
